IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHERRY KING,

                Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

No. 6:13-cv-00765-HZ

OPINION & ORDER

BRUCE W. BREWER
Law Offices of Bruce W. Brewer, P.C.
PO Box 421
West Linn, OR 97068

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97201-2902

1 - OPINION & ORDER

JORDAN D. GODDARD
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Sherry King seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## PROCEDURAL BACKGROUND

On April 8, 2009, Plaintiff protectively filed applications for DIB and SSI, alleging an onset date of July 11, 2003. Tr. 147–158.[1] Her applications were denied initially and upon reconsideration. Tr. 89–111. Thereafter, Plaintiff amended her onset date to July 16, 2008. Tr. 166.

On June 8, 2011, Plaintiff appeared, with counsel, at a hearing before an Administrative Law Judge ("ALJ"). Tr. 40–76. On July 20, 2011, the ALJ issued a decision finding Plaintiff not disabled. Tr. 24–33. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–7.

## FACTUAL BACKGROUND

Plaintiff was born on December 4, 1966. Tr. 147, 151. She alleges disability based on fibromyalgia, lumbar disease, mental health issues, ankle injury, hip problems, posttraumatic

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 10.

stress disorder ("PTSD"), borderline schizophrenia, sleeping disorder, eyeglasses, speech impairment, being a slow learner, and migraine headaches. Tr. 174. Plaintiff has an eighth grade education and attended special education classes. Tr. 52. Because the parties are familiar with the medical and other evidence of record, I will refer to any additional relevant facts necessary to my decision in the discussion section below.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140–41; see also 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; see also 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

3 - OPINION & ORDER

In step four, the Commissioner determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If so, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish the claimant can perform other work. Yuckert, 482 U.S. at 141–42; see also 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since July 16, 2008, her amended alleged onset date. Tr. 26. At step two, the ALJ found Plaintiff had the following severe impairments: borderline intellectual functioning ("BIF"); fibromyalgia; affective disorder NOS; and personality disorder NOS. Tr. 27. At step three, the ALJ found Plaintiff's impairments did not meet or equal the requirements of a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

At step four, the ALJ assessed Plaintiff as having the following RFC: "perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: limited to simple routine tasks; no public contact; and occasional co-worker contact." Tr. 28. With this RFC, the ALJ determined Plaintiff is unable to perform any of her past relevant work. Tr. 32. However, at step five, the ALJ determined Plaintiff is able to perform jobs that exist in significant numbers in the national economy such as postage machine operator and assembler of small products. Tr. 32–33. Thus, the ALJ determined Plaintiff is not disabled. Tr. 33.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009). Substantial evidence is "more than a mere scintilla, but less than a preponderance." Bray, 554 F.3d at 1222 (citation and internal quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the Commissioner's conclusions. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). Where the evidence can support either a grant or a denial, the court may not substitute its judgment for that of the Commissioner. Id. (citation omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the court cannot affirm the Commissioner's decision upon reasoning the ALJ did not assert in denying the claimant benefits. Bray, 554 F.3d at 1225–26 (citation omitted).

**DISCUSSION**

Plaintiff makes the following assignments of error: (1) the ALJ failed to properly consider the opinion of Dr. Joshua Boyd; (2) the ALJ failed to properly consider the lay witness statement of Michelle Pendergrass; and (3) the ALJ erred by failing to inquire whether the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT").

**I.      Dr. Boyd**

Plaintiff argues the ALJ erred by "silently rejecting" portions of the opinion of Dr. Joshua Boyd, a non-examining State-agency psychologist, when making the RFC assessment.

5 - OPINION & ORDER

There are three types of medical opinions in social security cases: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. See Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (internal citation omitted); see also 20 C.F.R. §§ 404.1527(c)(1)–(2), 416.927(c)(1)–(2). Generally, a treating source's opinion carries more weight than an examining source's opinion, and an examining source's opinion carries more weight than that of a source who did not examine the claimant but formed an opinion based on a review of the claimant's medical records. Id.

On July 10, 2009, Dr. Boyd completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment ("MRFCA") form.[2] Tr. 377–390, 391–94. In Section I of the MRFCA form, Dr. Boyd checked various boxes identifying Plaintiff's mental limitations. Tr. 391–92. In Section III, Dr. Boyd found the following Functional Capacity Assessment:

> A and B.  Cl is able to perform simple and routine tasks in a routine setting with regular brks only.  More detailed tasks too daunting for this lady.
>
> C.  No public contact and limited coworker interaction due to histrionic presentation.
>
> D.  Would benefit from vocational rehab in her attempts to seek employment with restrictions noted on this mrfc.

Tr. 393. The ALJ discussed these limitations at the hearing and incorporated them into the RFC. Tr. 28, 43–44, 74–75. However, Plaintiff argues the ALJ erred by failing to incorporate all of the limitations identified by Dr. Boyd in the MRFCA.

The Social Security Administration Program Operations Manual System ("POMS") provides that the MRFCA is divided into four sections.[3] Bertram v. Colvin, 2013 WL 2659471, *2 (D. Or. June 4, 2013) (citing POMS DI 24510.060(B)). "Section I is merely a worksheet to

---

[2] Plaintiff does not argue the ALJ failed to incorporate any of Dr. Boyd's findings found in the Psychiatric Review Technique form.
[3] "The POMS does not have the force of law, but it is persuasive authority." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006) (internal citation omitted).

6 - OPINION & ORDER

aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." Id. (quoting POMS DI 24510.060(B)(2)). Section III, the "Functional Capacity Assessment, is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded." Id. (quoting POMS DI 24510.060(B)(4)); see also POMS DI 25020.010(B)(1) ("It is the narrative written by the psychiatrist or psychologist in section III . . . that adjudicators are to use as the assessment of RFC."). As such, "the ALJ need not incorporate every checked box in Section I into the ultimate RFC." Rounds v. Comm'r Soc. Sec. Admin., 2013 WL 1767880, *7 (D. Or. April 24, 2013); see also Israel v. Astrue, 494 Fed. Appx. 794, 797 (9th Cir. Oct. 12, 2012).

As a result, there was no error by the ALJ in failing to incorporate each checked box in Section I of the MRFCA into the RFC. In Section III of the MRFCA, Dr. Boyd found Plaintiff "is able to perform simple and routine tasks in a routine setting with regular [breaks] only. . ." and "[n]o public contact and limited coworker interaction due to histrionic presentation." Tr. 393. This finding is reflected in the RFC limiting Plaintiff to "simple routine tasks; no public contact; and occasional co-worker contact." Tr. 28. However, Dr. Boyd also stated Plaintiff "[w]ould benefit from vocational [rehabilitation] in her attempts to seek employment with restrictions noted on this MRFC." Tr. 393. This statement is not reflected in the RFC.

The RFC is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of the jobs." 20 C.F.R. § 404, Subpt. P, App. 2 § 404.1512(a). Thus, the RFC is the most a claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1)–(2), 416.945(a)(1)–(2). All of the claimant's impairments, both severe and nonsevere, must be considered when assessing the RFC. Id.

7 - OPINION & ORDER

The language used by Dr. Boyd when suggesting Plaintiff would benefit from vocational rehabilitation indicates it is merely a recommendation.  When incorporating functional limitations from a medical opinion into the RFC, an ALJ may rely on specific imperatives, rather than recommendations.  Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008).  This statement by Dr. Boyd is neither a diagnosis nor statement of Plaintiff's RFC, but rather a recommendation of a way for Plaintiff to seek employment.  See Valentine, 574 F.3d at 691–92.  As a result, the ALJ did not err by omitting Dr. Boyd's recommendation that Plaintiff would benefit from vocational rehabilitation in her attempts to seek employment, from the RFC.

## II.     Lay Witness Statement

Plaintiff also argues the ALJ erred by "silently rejecting" portions of a lay witness statement from Michele Pendergrass, the girlfriend of Plaintiff's son.

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  The ALJ must provide "germane reasons" when rejecting lay testimony.  Molina, 674 F.3d at 1114.  The ALJ may reject lay testimony that conflicts with the medical evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)).  The ALJ, however, is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. Molina, 674 F.3d at 1114.  "[W]here the ALJ's error lies in a failure to properly discuss lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

On June 1, 2011, Ms. Pendergrass submitted a one-page declaration describing how Plaintiff lived with her for approximately two years, along with Plaintiff's son and Plaintiff's three granddaughters.  Tr. 238.  Ms. Pendergrass described how Plaintiff had a lot of negative psychological issues, including suicidal intentions.  Id.  She explained how Plaintiff had difficulty watching her granddaughters, acted very childish, and would get in fights with her granddaughters.  Id.  She described how Plaintiff would forget to take her medications and attend her appointments, did not interact with others and had no friends, and how it was very difficult to get Plaintiff out of her bedroom and out into public.  Id.  Finally, she explained Plaintiff was not good at learning new things, would get frustrated very easily, and was paranoid of the neighbors.  Id.  As a result, Ms. Pendergrass stated Plaintiff moved out of the house because they could no longer handle dealing with Plaintiff and her difficulties.  Id.

The ALJ discussed Ms. Pendergrass' declaration with Plaintiff at the hearing and stated he considered it in his decision.  Tr. 31, 51–52.  The ALJ noted "Ms. Pendergrass reported that the claimant had problems getting along with her grandchildren, acting childish, some memory issues as well as some anxiety issues in addition to her negative outlook."  Tr. 31.  The ALJ then found: "Ms. Pendergrass' statement was considered in arriving at the residual functional capacity outlined above.  The claimant has been limited to simple routine tasks; no public contact; and occasional co-worker contact."  Tr. 31.

Plaintiff argues the ALJ failed to incorporate all of Ms. Pendergrass' declaration.  Specifically, Plaintiff argues Ms. Pendergrass' statement about Plaintiff spending most of her time alone in her bedroom establishes Plaintiff will be absent from work in excess of one day per month.  The VE testified at the hearing that absenteeism in excess of one day per month on a regular ongoing basis would preclude employment.  Tr. 73.  However, nothing about Ms.

9 - OPINION & ORDER

Pendergrass' statement establishes Plaintiff would be absent in excess of one day per month. Although her statement about Plaintiff spending most of her time in her bedroom could be interpreted to create excessive absenteeism from work, the ALJ's failure to interpret her statement that way was not unreasonable. "[The court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." Burch, 400 F.3d at 680–81 (internal quotation marks and citation omitted).

Furthermore, in finding Plaintiff's own testimony not credible, the ALJ noted multiple times how Plaintiff's testimony of her inability to do practically anything was inconsistent with her reported activities of daily living. Tr. 27, 29, 31. The ALJ noted how mental health sources stated Plaintiff reported engaging in activities including cleaning, cooking, gardening, camping, and coping with stress by exercising and walking. Id. In rejecting Plaintiff's credibility, the ALJ found these activities far exceed her self-reported inability to do anything. Id. An ALJ's failure to discuss lay testimony is harmless when the lay testimony describes the same limitations as the claimant's own testimony, and the ALJ properly rejected the claimant's testimony. Molina, 674 F.3d at 1122. Because Plaintiff does not challenge the ALJ's credibility finding of her own testimony, any error by the ALJ in failing to discuss Ms. Pendergrass' statement about Plaintiff spending most of her time in her bedroom was harmless.

### III. VE Testimony

Finally, Plaintiff contends the ALJ erred at step five by failing to inquire whether the VE's testimony was consistent with the DOT.

In accordance with Social Security Ruling ("SSR") 00–4p, an ALJ may rely upon the testimony of a VE regarding the requirements of a particular job, but first must inquire whether the VE's testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152–54 (9th

Cir. 2007); see also SSR 00–4p, available at 2000 WL 1898704. An ALJ's failure to inquire is a procedural error, and may be harmless if no conflict existed or if the VE "provided sufficient support for her conclusion so as to justify any potential conflicts." Massachi, 486 F.3d at 1154 n.19. It is Plaintiff's burden to establish the error was prejudicial. Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012).

At the hearing, the ALJ posed a hypothetical to the VE. Tr. 43–44. Based on the hypothetical, the VE identified two occupations that Plaintiff could perform: Postage Machine Operator, DOT § 208.685–026 available at 1991 WL 671757, and Assembler of Small Products I, DOT § 706.684–022 available at 1991 WL 679050. Tr. 45–46. While the ALJ stated in his decision "[p]ursuant to SSR 00–4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles," the ALJ did not explicitly pose this question to the VE at the hearing. Compare Tr. 33 with Tr. 43–50.

While Plaintiff argues the ALJ erred by failing to inquire whether the VE's testimony was consistent with the DOT, she does not articulate any specific discrepancies between the VE's testimony and the DOT. Further, Plaintiff did not file a reply brief after the Commissioner identified this shortcoming. A court only considers "issues which are argued specifically and distinctly in a party's opening brief." Boyer v. Colvin, 2013 WL 3333060, *10 (D. Or. July 1, 2013) (quoting Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994)). Therefore, Plaintiff's bare recitation of this procedural error is insufficient. See id. An independent review of the record reveals no patent disparities between the VE's testimony and the DOT. As such, any failure by the ALJ to inquire whether the VE's testimony was consistent with the DOT was harmless.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this \_\_12\_\_ day of May, 2014.

_____
MARCO A. HERNANDEZ
United States District Judge